BARRY J. PORTMAN
Federal Public Defender
JOYCE LEAVITT
Assistant Federal Public Defender
555 - 12th Street, Ste. 650
Oakland, California 94607-3627
Telephone: (510) 637-3500
Counsel for Defendant URSUA-CISNEROS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.   CR 07- 00695 WHA |
| | ) | CR 04-00207 WHA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| | ) | |
| FRANCISCO JAVIER URSUA-CISNEROS, | ) | Date:        July 23, 2008 |
| | ) | Time:        2:00 p.m. |
| Defendant. | ) | Courtroom:  Hon. William H. Alsup |
| | ) | |

## INTRODUCTION

On May 13, 2008, defendant Francisco Javier Ursua-Cisneros pled guilty to a one count indictment in CR 07-00695 WHA, charging him with a violation of 8 U.S.C. §1326 - illegal re-entry after deportation. At the same time, he admitted to violating the terms of his supervised release in CR 04-00207 WHA by illegally re-entering the United States. Mr. Ursua-Cisneros will be sentenced by the Court on both matters on July 23, 2008. The guideline range for the new matter in CR 07-00695 WHA is 77-96 months because the offense level is 21 and Criminal History category is VI. The guidelines for the supervised release violation in CR 04-00207 WHA is 18-24 months because the offense is a grade B violation and Criminal History category is V.

The probation officer recommends that Mr. Ursua-Cisneros be sentenced to 77 months custody in CR 07-0695 WHA and 21 months custody in CR 04-00207 WHA with the sentences to run concurrently. PSR, Sentencing Recommendation. This is consistent with the plea agreement and

1  Mr. Ursua-Cisneros asks the Court to sentence him accordingly. Plea Agreement at ¶8. The Court

2  could accomplish this by ordering concurrent sentences as recommended by the probation officer.

3  Alternatively, the Court could apportion the 77 month sentence between the new conviction and the

4  supervised release violation (for example the Court could sentence the defendant to 57 months on the

5  new matter and 20 months on the supervised release with the sentences to run consecutively).

6  However it is accomplished, the parties and probation officer are all in agreement that a total

7  sentence of 77 months is the reasonable and appropriate disposition in this case. It also is consistent

8  with the sentencing factors enumerated in 18 U.S.C. § 3553(a).

9      Mr. Ursua-Cisneros files this sentencing memorandum in support of his request. Attached to

10  the sentencing memorandum are the following exhibits: (1) letter from Pastor Juan A. Navarrete

11  (Exhibit A); (2) letter from Norma A. Navarrete (Exhibit B); (3) letter from Melvin Merlos (Exhibit

12  C); (4) letter from Ruth Garcia (Exhibit D); (5) letter from Maria Ancira (Exhibit E); (6) letter from

13  Izela Michel (Exhibit F); (7) letter from Deborah Frias (Exhibit G); (8) letter from Cristian Duarte

14  (Exhibit H); (9) letter from Manuel Ancira (Exhibit I); (10) letter from Edwardo Beltran (Exhibit J);

15  (11) letter from Heribero Ursua (Exhibit K); (12) letter from Humberto Ramirez (Exhibit L); (13)

16  letter from Jose Rodriguez (Exhibit M); (14) letter from Giselle Ursua (Exhibit N); (15) letter from

17  Stephanie Manriquez (Exhibit O); (16) letter from Catalina Romero (Exhibit P); (17) letter from

18  Elizabeth Ursua (Exhibit Q) .

19                                        **BACKGROUND**

20  **A. Offense Conduct**

21      Francisco Ursua-Cisnero, who is a citizen of Mexico, illegally re-entered the United States

22  without permission after being deported in November 2005. PSR ¶4.

23  **B. Personal Background**

24      Francisco Ursua-Cisneros is a 29 year old man who was born in Mexico. PSR ¶51. His family

25  migrated to the United States when Francisco was three years old and he has lived here all of his life.

26  *Id.* at ¶53. His parents and siblings live in the United States legally. When Francisco was fifteen

1   years old, his parents moved to Antioch, California in a neighborhood where drugs and violence

2   were rampant. *Id.* Francisco started running with a gang and quickly became addicted to crystal

3   methamphetamine when he was just 13 years old. *Id.* Most if not all of Francisco's prior crimes are

4   related to his involvement with a gang. *Id.* However, in late 2002, Francisco was able to quit using

5   drugs and he stopped associating with the gang as well. PSR ¶60. As his drug use stopped, so his

6   criminal activity stopped as well. *See, e.g.* PSR ¶¶25-48 (showing no arrests or convictions after

7   2002 other than illegal re-entry charges and driving on a suspended license).

8       Francisco was last deported in November 2005. He returned to this country a few weeks later,

9   determined to live life differently. He joined a church in Antioch where he attended regularly, taught

10  Sunday school, and was very involved with the congregation. PSR ¶55, 56. Francisco also worked

11  full time as a free-lance house painter to support his family. *Id.* at ¶62.

12      The many letters written on Francisco's behalf describe a man who is dedicated to the church

13  and to his family. It is clear from these letters that Francisco has changed from a drug-addicted gang

14  member to a hard-working, church member and family man. Pastor Juan A. Navarrete describes

15  Francisco this way:

16          Francisco Ursua has been a faithful member of our church since 2006 . .
            Francisco has been active in the church's Man's group, assisting in the
17          Ministry and attending our weekly prayer meetings. He has faithfully
            attended every church service since he has been member.
18
    Exhibit A. The pastor's wife writes this:
19
            I have personally known Brother Francisco Ursua for many years and I can
20          attest that Brother Francisco has always conducted himself as a man of
            integrity and of great compassion. . he puts others before himself. He is
21          always willing to help others in need and what ever task that is given to
            him, he does it with a willing heart. As a result, is highly liked and well
22          respected by the congregation.

23  Exhibit B. The letters written by church members present a picture of Francisco which is consistent

24  with what was expressed by the pastor and his wife. *See, e.g.* Exhibit C ("he was very active in the

25  church. . .and also a very devoted minister"); Exhibit D ("He and I worked together on. . . the Sunday

26  school department . . .outreach and home bible studies. Francisco is a very passionate young man

who loved the Lord"); Exhibit E ("he was always wanting to please God"); Exhibit F ("Coming from a challenging past he has showed that he has left that behind. . .I have witnessed how he has touched many lives. He found a great passion for serving God"). One member of the church says this about Francisco

> When I first meet Francisco I was intimidated by his tatoo's [sic] but once I got to know [him] I realized that he was and is a kind, big hearted person. Soon after Francisco began teaching Sunday school to the pre-teens as well as preaching to the church. Francisco would testify of where the Lord brought him from . . . I can say that he has changed and deserves another chance.

Exhibit G. *See also*, Exhibit J ("He used to be a great leader in church and put a great example for everyone"); Exhibit L ("Francisco. . gave good advice to us teens to stay out of trouble and pursue a good path. He gave us advice on peer pressure, on how not to do things you know are bad, but you still do it because of peer pressure"); Exhibit M .("He was the first one to invite people to a better life in God and with God."); Exhibit P ("he always seeked [sic] to do more for God and for the church").

Francisco's family members also speak of a man who has evolved and is devoted to setting a good example for those around him. *See, e.g.* Exhibit H (I am a nephew of Francisco. . .he was their [sic] when I had problems . . . to help me. . . to guide me . . . he said "make the right decisions."); Exhibit K ("He would look out for his family he gave me advice as a man how to grow up and respect my elders he was a real example in my life he told me not to follow his foot steps and to listen to my mother and go to school."); Exhibit N ("he gave me words that helped a lot in school . . . he helped me keep my head up... he always read stories to me from the Bible").

Were the Court to sentence Francisco Ursua-Cisneros as requested, he would serve 6 ½ years in custody for the crime of illegal re-entry. A sentence of 77 months is more than triple the sentence he last received is more than sufficient to meet the goals of sentencing.

# DISCUSSION

**A Total Sentence of 77 Months is Sufficient but not greater than necessary in this Case**

The Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586 (2007), have dramatically altered the district court's role in sentencing. Taken together, these cases make it clear that district court judges now have the ability, as well as the duty, to exercise their judgment and discretion in arriving at a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Moreover, district courts must consider other factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1) - (7); *see also, e.g., United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (describing the "overarching statutory charge for a district court").

The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564. And, as the Court's subsequent decisions in *Gall* and *Kimbrough* demonstrate, *Booker*'s consultation requirement is not intended to limit the district court's sentencing discretion.

The Court in *Gall* emphasized the importance of deferring to the judgment of the sentencing courts, explaining:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. "The sentencing judge has access to, and greater familiarity with, the individual case and

the individual defendant before him than the Commission or the appeals court."

*Gall*, 128 S. Ct. at 597-98 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2469 (2007)). Moreover, the sentence must be based on "an individualized determination based on the facts." *Id.* at 597.

In Francisco Ursua-Cisnero's case, a combined sentence[1] of 77 months is sufficient but not greater than necessary to meet the objectives of sentencing. Some of the factors described in 18 U.S.C. §3553 which the Court should consider are described below.

### 1.   Nature and Circumstances of the Offense

Under 18 U.S.C. §3553(a), the Court should consider the nature and circumstances of the offense in determining an appropriate sentence. In this case, Francisco Ursua-Cisneros returned to the United States without permission after he had been deported.

Francisco, who is 29 years old, has lived in this country since he was 3 years old. PSR ¶53. His parents and siblings are all citizens. *Id.* at ¶52. Being in the country illegally is a status offense and Francisco committed the offense so that he could be close to his family. In addition, since returning to the United States in 2005, Francisco has not committed any crimes against others, but rather has gone to church two times a week, taught Sunday school and worked to support his family.

The crime for which Francisco is being sentenced is not a crime of violence. The last time Francisco was sentenced for being here illegally, he was sentenced to 23 months in custody. *Id.* at ¶31. He is facing a sentence which, if accepted by the Court would be more than triple his last sentence and will result in his being in jail for over 6 years for this offense. Based upon the nature

---

[1]In this case the Court will be sentencing Mr. Ursua-Cisneros for the new offense in CR 07-00695 WHA as well as the supervised release violation in CR 04-00207 WHA. The United States Sentencing Commission has set forth policy statements regarding violations of supervised release which provide that a term of imprisonment imposed after revocation of supervised release should be ordered to be served consecutively to any other sentence of imprisonment. USSG §7B1.3(f). However, even before the Supreme Court determined that the guidelines were advisory, the policy statements relating to violations of supervised release have always been merely advisory. *See* 18 U.S.C. §3553(a)(4)(B); USSG Ch.7, Pt. A, intro. comment. Moreover, after the Supreme Court decided *United States v. Booker* and its progeny, district courts have even greater discretion to sentence an individual irrespective of the advisory policy statements as long as the sentence is not "unreasonable" in light of the 18 U.S.C. § 3553(a) factors.

1  and circumstances of the offense, the Court should impose a total sentence of 77 months.

2  **2.  The History and Characteristics of Francisco Ursua-Cisnseros**

3  Under 18 USC §3553(a), the history and characteristics of Francisco Ursua-Cisneros is a

4  separate factor for the Court to consider in fashioning a fair and just sentence.  In this case, this

5  factor warrants a sentence of no more than 77 months.  The letters from family and fellow church

6  members show Francisco to be devoted to religion and to helping others.  *See* Exhibits A-G, J, L, M.

7  The many letters written present a consistent picture of someone who goes to church, teaches Sunday

8  school and teaches others to learn from his mistakes and to do what is right.  *Id.*  His nieces and

9  nephews, as well, state that Francisco is there to support them, and to make sure that they make good

10  decisions and not fall to peer pressure.  *See, e.g.* Exhibits  H ("he was there to help me. . .he said

11  "make the right decisions."); K ("he told me not to follow his footsteps and to listen to my mother

12  and go to school"); N ("he helped me keep my head up. . .he always reads stories to me from the

13  bible.")

14  In cases similar to this one, Courts have granted sentences below the guidelines based upon

15  an individual's good works.  *See, e.g. United States v. Cooper*, 394 F.32d 172 (3rd Cir. 2005).

16  Moreover, in illegal re-entry cases where a defendant has spent most of his life in the United States,

17  Courts have sometimes granted below guideline sentences where an alien is unusually acculturated

18  into the American culture.  *See, e.g. United States v. Lipman*, 133 F.3d 726 (9th Cir. 1998)(in illegal

19  reentry case, court has authority to downward depart on ground that defendant had been "culturally

20  assimilated" into American society.); *United States v. Tzep-Mejia* (461 F.3d 522 (5th Cir. 2006)(in

21  illegal reentry case, court imposed below-guideline sentence where "defendant had been in the

22  United States for several years and had a degree of cultural assimilation"); *United States v. Castillo*,

23  386 F.3d 632 (5th Cir. 2004)(downward departure in illegal reentry case based upon cultural

24  assimilation was not plain error).  In this case, Francisco has lived in the United States since he was 3

25  years old.  He reads U.S. newspapers, speaks English without any accent and his entire immediate

26  family lives in this country.  A sentence below the guideline range is appropriate in this case based

1  upon the fact that Francisco is culturally assimilated into American society.

2      In addition, courts have determined that a below guideline sentence may be warranted because

3  of the fact that an illegal alien may be facing more severe prison conditions than non-aliens.  *See, e.*

4  *g. United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005)(in illegal reentry case possible

5  departure where defendant punished more harshly and not eligible for half way house at end of

6  sentence); *United States v. Davoudi,* 172 F.3d 1130 (9th Cir. 1999)(court has discretion to depart

7  where deportable alien may be unable to take advantage of security designation and six month's

8  home confinement); *United States v. Farouil*, 124 F.3d 838 (7th Cir. 1997)(court could consider

9  whether defendant's status as deportable alien might result in unusual or exceptional hardship in

10  conditions of confinement).  Here, Francisco will suffer more severe prison conditions as an illegal

11  alien because he will not be eligible for lower security designations nor will he be able to spend any

12  time in a half-way house or home detention at the end of the sentence.  The harsher conditions facing

13  Francisco in custody is an additional factor to be considered.

14      Finally, the Ninth Circuit has determined that lack of guidance as a youth may be mitigating

15  factors which render a defendant less culpable.  *See, e.g. United States v. Floyd*, 945 F.2d 1096 (9th

16  Cir. 1991).  As described above, Francisco grew up in a neighborhood riddled with drugs and gang

17  violence and he soon fell victim to it.  The most guidance Francisco received was on the streets.  His

18  exposure to violence and his lack of guidance undoubtedly played a role in his getting to this point

19  where he is no longer welcome in the country which he has known as his home for 26 years.

20      Francisco is someone who understood that he had to do things differently in the future and he

21  committed himself to making significant changes in his life.  He has helped others, yet he must still

22  leave a country which has been his home for 26 years.  In addition, he will be exposed to harsher

23  conditions in custody because he will be ineligible for many programs offered to other inmates.

24  Under all of these circumstances, the history and characteristics of Francisco Ursua Cisneros warrant

25  a combined sentence of no more than 77 months.

26

1    **3.    A sentence of 77 months in custody is sufficient to show respect for the law, just punishment, adequate deterrence and to protect the public or for training**

3    18 U.S.C. §3553 provides that the Court shall consider the need for a sentence to promote

4    respect for the law, provide just punishment for the offense and afford adequate deterrence to

5    criminal conduct. 18 U.S.C. §3553(a)(2)(A) and (B). Furthermore, the Court is required to consider

6    the need to provide a defendant with needed educational or vocational training or other correctional

7    treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(D). A sentence of 77 months meets

8    these objectives of sentencing.

9    For example, the sentence does not need to be greater to show respect for the law because a

10    sentence of 6 ½ years for the offense of illegal re-entry is significant. In addition, the letters from

11    fellow church members, friends and family make it clear that Francisco has respect for the law as

12    demonstrated by his advice to teens on how to stay out of trouble and go to school. Exhibits K, L.

13    Francisco is committed to leading a life in which he can be an inspiration for others to do the right

14    thing. Under this circumstance a sentence of 77 months is sufficient to show respect for the law.

15    Further more, a sentence of 77 months serves the purposes of "just punishment" as it is a long time

16    in custody for the status offense of being in this country illegally.

17    A sentence of 77 months also provides adequate deterrence as it is a significant amount of time

18    for this offense. Francisco knows that he cannot come back to the United States or else he will spend

19    more time in custody the next time around. A sentence of 77 months will serve the purpose of

20    adequate deterrence.

21    Finally, a sentence of more than 77 months in custody is not needed to provide a defendant

22    with any "needed educational, vocational or other correctional treatment" as Francisco is not eligible

23    to participate in many of the programs since he is an illegal alien. *See* 18 U.S.C. §3553(a)(2)(D).

24    / / /

25    / / /

26

## CONCLUSION

For all of the reasons described above, Francisco Ursua-Cisneros asks the Court to sentence him to a total of 77 months in custody in CR 07-0695 WHA and CR 04-0207 WHA. He further asks the Court to recommend that he be designated to a facility as close to his family as possible so that he spend time with his family and friends before being deported.


Dated: July 16, 2008


                              Respectfully submitted,

                              BARRY J. PORTMAN
                              Federal Public Defender


                                    /S/


                              JOYCE LEAVITT
                              Assistant Federal Public Defender

# EXHIBIT   A



**Antioch Apostolic Assembly**
912 G Street
Antioch, CA 94509
925-755-8144

April 14, 2008

To Whom It May Concern:

Francisco Ursua has been a faithful member of our church since 2006. Francisco and his family have been a great help to the church. They have helped in assisting those in need, emotional and spiritually. They have supported the church when in need. Some of the extra activities they have volunteered for have been the cleaning of the church, picking up visitors and participating in the church's activities. They have been the cause of many new comers becoming members themselves. Francisco has also been active in the church's Man's group, assisting in the Ministry and attending our weekly prayer meetings. He has faithfully attended every church service since he has been member.

We highly esteem Francisco as part of our devoted members. If there are any questions or concerns feel free to call me at the number stated above or at my Cell 925-382-8316.

God Bless,

*Jeremy A. Navarrete*

Pastor Juan A. Navarrete

# EXHIBIT   B

**Norma A. Navarrete**

**3377 Deer Valley Rd. PMB#335 Antioch, CA 94531**

April 15, 2008

Re: Reference for Francisco Ursua

To Whom It May Concern:

I certify that Francisco Ursua, is a member in good standing within the Antioch Apostolic Assembly.  I am the pastor's wife of the church and I have personally known Brother Francisco Ursua for many years and I can attest that Brother Francisco has always conducted himself as a man of integrity and of great compassion within the church. He has been a tremendous blessing to the entire church because he puts others before himself. He is always willing to help others in need and what ever task that is given to him, he does it with a willing heart. As a result, is highly liked and well respected by the congregation. Therefore, it is with great hope that this letter may bring some insight of Brother's Francisco's good character and reputation within the church. If further information is needed, please do not hesitate to contact me. I may be reached at (925) 382-6228, or by the aforementioned mailing address.

Sincerely,

Norma A. Navarrete
Pastor's wife of Antioch Apostolic Assembly

# EXHIBIT C

4/13

TO WHOM IT MAY CONCERN

My NAME IS MELVIN MERLOS. I HAVE KNOWN FRANCISCO CISNEROS-URSUA FOR ALMOST 2 YEARS. HE AND I ATTEND ANTIOCH APOSTOLIC CHURCH. FROM WHEN I FIRST MET HIM I NOTICED THE CHANGED PERSON HE WAS. HE WAS VERY ACTIVE IN CHURCH AND ALSO VERY DEDICATED. IM NOT EXACTLY SURE WHAT HE'S DONE OR WHAT HE HAS DONE IN THE PAST. BUT I DO KNOW HE WAS A CHANGED PERSON THROUGH CHRIST. HE IS A VERY GOOD FRIEND TO ME AND ALSO A VERY DEVOTED MINISTER IN OUR CHURCH. ALL I ASK IS THAT YOU PLEASE TAKE IN CONSIDERATION THAT HE HAS CLEARLY MADE A CHANGE IN LIFE TO SERVE GOD AND WORK FOR GOD. HE IS A FRIEND AND A BROTHER IN CHURCH TO ME. THANK YOU FOR TAKING THE TIME TO READ THIS.

MELVIN MERLOS

#(707) 342-5432

# EXHIBIT   D

April 13, 2008

To whom it may Concern;

My name is Ruth M Giarcia. I am a member of the Antioch Apostolic church. Where I meet Fransico Cisneros-Ursua. He and I worked together on many Commitees such as; The Sunday School Department, Commite Outreach, and Home bible Studies. Fransico is a very passionate young man who loved the Lord. I enjoyed a great deal working with Fransico because he was always willing to do anything we would ask. He always had a wonderful outlook in any situation. With Fransico the glass way always half full rather then half empty!!! I miss him a great deal, I pray that you may look at this letter with grace and favor towards Fransico! Brother Fransico If you read this, know that we love you and we are praying for you!!

Thank you for taking the time to read this

#(707)342-5432                        Sincerly, Ruth M Giarcia

# EXHIBIT   E

Maria G. Ancira
Manuel Ancira


    I have known Francisco Ursua
and he has been a good person
to have met. He had always
been a very respectful young
man. He was always wanting
to please God. and we
appreciate young men like
him whom seeked God. We
miss him and hope to
see him back soon. Thank you!!

Sincerely,

Maria G Ancira

    Maria Ancira

(925) 752-1355

# EXHIBIT   F

April 13, 2008

To whom it concern,

I want to make a statement about Francisco Ursua. I have had the privaledged to meet and get to know my fellow friend Francisco Ursua. He has impacted many lives with his actions & testmony. He has shown an attitude of an overcomer who has overcome hard life obstacles. Coming from a challenging part he has showed that he has left that behind. I know this because he has and I have witnessed how he has touched many lives. He found a great passion for serving God and help many people in need who are need guidence. He has shown dedication toward early youth by being a sunday school teacher, helping & preaching at church. I hope that this may give you an idea of who he really is. Everybody deserves a second chance.

Sincerly,

Izela Michel

Izela Michel

#(925)565-7292

# EXHIBIT   G

April 13, 2008

To Whom It May Concern,

~~xxxxxxxxxxxxxx xxxxxx~~ my name is Deborah Frias and I am a member of the Antioch Apostolic Church of the Faith of Christ Jesus. I meet Francisco Ursua Cisneros about two and half years ago at church. When I first meet Francisco I was intimidated with his tatoo's but once I got to know I realized that he was and is a kind, big hearted person. Soon after Francisco began teaching Sunday School to the pre-teens as well as preaching to the church. Francisco would testify of where the Lord brought him from. I can not say that Francisco has not made any mistakes but I can say that he has changed and deserves another chance. Please grant Francisco the opportunity to reunite with his family and friends. Allow him to live again, in our society.

From: Deborah Frias

*Deborah Frias*

# (707) 207-1156

# EXHIBIT   H

April 13, 2008

To whom it may concern,

My name is Cristian Duarte, I am a nephew of francisco, to me he is my best uncle I everhad. He is the light of my life he taught me what I know now. I am lost without him, he has been their when my hopes were down, he was their when I had problems, he was their to help me, to guide me he is the reason I am who I am. When they took him I felt heart broken, I was their when they took him and I still remember what he said "what ever happens I will still be their nomatter how long it till I see you but make the right decisions"

#(925) 594-1719          from:
                         Cristian Duarte

P.S. tell him that I love him.

# EXHIBIT   I

Manuel Ancira


As an elderly person I have known Francisco Ursua and our family has always appreciated the respect that this gentleman has always had toward our family. Always seeking the will of God we want to be able to see him back and we would like for him to help out with our church activities again.


Sincerely,                    #(925) 752-1355

Manuel Ancira H


Manuel Ancira

# EXHIBIT   J

04/13/08

To Whom it may concern

Francisco Ursua is a very good friend to me and was like a brother to me. He was a cool guy and we use to hang out almost every day because we went to the same church. He used to be a great Leader in church and put a great example for everyone. Until this incident happened, that he got arrested and was sent to jail. After this happened, everyone who loved him shed in tears. We were heart broken, including me. So all I want to exhort is that he was a really great person and that if he came back, a part of our Life would come back too. We miss him and we Love him very much and where ever he is, we will have him in our Heart. We miss you Francisco

Sincerely,

Eduardo Beltran

#(925) 457-8903
#(650) 716-7424

# EXHIBIT   K

4/13/08

To whom it may concern

Francisco Ursula is my uncle. He doesn't belong were he
is at right now. He is a really good person and he
likes to speak his mind. He is a person that
would go to church until this insident happened.
He would look out for his family he gave me
advice as a man how to grow up and respect my
elders he was a real example in my life he
told me not to follow his foot steps and to
listen to my mother and go to school. We would
always joke around and go buy clothes and
hang out with my friends and play football.
once people found out that he got arrested they
just stood on slack and started singing. He helped
me in school and pick the right decisions in
life. He will never be forgotten he would always
be in my heart and if he came back a part of
life would come back to. I love him without with
all my heart.

Sincerely,

#(925)594-1719

# EXHIBIT   L

4/13/08

To whom it may concern

Francisco Ursua is a good person that gave good advice to us teens to stay out of trouble and pursue a good path. He gave us advice on peer preasure, on how not to do things you know are bad, but you still do it because of peer preasure. He is a type a person that will help you on your ups and downs. Until this great inccident he was a great person and we all hope that we will be able to see him again.

Sincerely,
Humberto Piña Ramirez

# EXHIBIT   M

Jose Rodriguez                    4/13/08

Francisco Ursua was my right hand man. I Jose would like to petition for his return soon. My heart almost hurts when I think about the great moments that we went through and of the downtimes. Francisco was always there. He was my partner in prayer, Fasting. He was the first one to invite people to a better life in God & with God. He also believe in young people not having to go through the rough times he went through, always testifying about what God did for his life. I need him back soon my cell groups of people who need help still rong for his return. Many came to a better life because of his testimony. He always made a difference and we would like for him to continue doing this.

Sincerely,
Jose Rodriguez

#(925)-470-7334

Jose Rodriguez

# EXHIBIT  N

FRANCISCO URSUA
is my uncle and he was always
there when I needed him it hurts
me alot to see that he is locked
up. And he never hert me he was
always respectful to me & my family
we always went to church together.
he is a very calm person he has a
daughter that he LOVES. he was
always with a positive atitued
he gave me words that helped me
alot in school I always remembered
his words, he helped me keep my
head up when ever I was down &
out of times. he always read
stories to me from the Bible
And in my prayers there is faith
& I have faith that one day
he will walk out of that cell and
we will be waiting to see him
free. And in my prayers there is
tears and I am praying that you
can answer my prayers & wishes I
would like to see my uncle on my
birthday wen I tern 15 and If my
letter isn't good enough than Thank you

for at least reading this
letter it mean's alot to me
if you will at Least reduce years
from him. Thank you once more
God Bless you
TRULY,

Giselle Ursua.

(925) 594-1719



# EXHIBIT   O

3.25.08

Hello,

My name is Stephanie Manriquez
I just want to say that I
beg you don't give my uncle
Francisco 7 yrs please he is really
a good person. he didn't do anything
bad. Please we need him out
here. he goes to church, on his
birthday we took him out to
eat. to me he is the best
uncle, he always gave me advice
when I needed it. PLEASE we
really miss him. Please don't
give him 7yrs at least give him
1 or 2 yrs. He is not a bad person
He loves going to church he
loves reading the bible. everytime
we would have an youth event
he has been the greatest
please, please. I respect any
decision you make but please
have compassion of the people
that love him.

God Bless you

Sincerly,
Stephanie Manriquez

# EXHIBIT   P

Catalina Romero                                    4/13/08

   It has been of great pleasure to have known Francisco URSUA for the short time that I Catalina knew him many young men & women looked up to him because they knew about the great testimony he had, what he had been in the past & the power that God has to transform a human being. When everything is just related to what's moral & visible he always seeked to do more For God and For the church. He asked For help of how to do and write subjects to teach about doing what's Right. He also asked For a second & third opinion Just For the subject to come out perfect. He always believed in doing it with a purpose. & almost to perfection. And I hope to see him back I enjoyed helping him put

his subjects together because
he enjoyed  working for
others with a great
pleasure. Always without
hesitation. We long for
his return soon.

Sincerely,

Catalina Romero

# (925) 470 - 7334.

# EXHIBIT  Q

Francisco Ursua

is my uncle and I love him
so much. My uncle is helpfull,
Kind, and playfull because he
plays soccer with me. When
we would go to church I would
see him preach up on the
alter. In church he did a lot
of activities with the groups.
He would always be there for
me and my family. My family
and me always counted on him
every time. My uncle always made
me laugh and make us feel like
we are not alone. I prayed
that I wanted him back
because he is so nice to me.
I saw that, can you please let
him out? Thank you for reading
this letter.

From: Elizabeth Ursua